UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
        :
OSRECOVERY, INC., et al.,        :
        :
       Plaintiffs,        :    02-CIV-8993 (LAK)
        :
   v.        :
        :
ONE GROUPE INTERNATIONAL, INC., et al.,        :
        :
       Defendants.        :
        :
------------------------------------------------------------------x

### DEFENDANT PAREX BANK'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
### CROSS-MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
### FOR INJUNCTIVE AND OTHER RELIEF AGAINST PAREX BANK

**VERNER SIMON, P.C.**
*Attorneys for Defendant Parex Bank*
1350 Broadway
New York, New York 10018
(212) 502-5500

**On the brief:**
Alec Sauchik (AS-5002)
Paul W. Verner (PV-2704)

# TABLE OF CONTENTS

**PRELIMINARY REBUTTAL** ..................................................................................................1

**ARGUMENT** ..............................................................................................................................1

POINT I.  PLAINTIFFS MISREPRESENT THE STATUS OF NEGOTIATIONS AND AGREEMENTS BETWEEN PAREX BANK ...........................................................................................1

POINT II. PLAINTIFFS BEAR A BURDEN OF PROOF ON PERSONAL JURISDICTION BY A PREPONDERANCE OF THE EVIDENCE AFTER PLAINTIFFS' *PRIMA FACIE* SHOWING HAS BEEN PROPERLY REBUTTED .........................................3

POINT III. PAREX BANK HAS NOT CONDUCTED SYSTEMATIC AND CONTUNIOUS BUSINESS IN NEW YORK NOR HAS PAREX BANK PURPOSELY AVAILED ITSELF OF THE FORUM NOR DO THE PLAINTIFFS' CAUSES OF ACTION ARISE FROM PAREX BANK'S CONDUCT IN NEW YORK .......................4

    A. Maintenance of Correspondent Accounts in New York ...........................4

    B. Parex Bank's Use Of An Independent Attorney/Consultant ....................6

       (Rabinovich) Does Not Provide A Basis For Personal Jurisdiction ........8

    C. Parex Bank's Websites Do Not Confer Jurisdiction...................................8

    D. Parex Bank is Not Subject to Jurisdiction In New York Merely Because It Issues CIRRUS Debit Cards That Can Be Used At ATMs ........................................................................................................9

    E. Parex Bank Does Not Market or Solicit Business in New York ..............9

POINT IV. PAREX HAS NEVER WAIVED JURISDICTIONAL DEFENSES AND, IN FACT, PRESERVED THEM .........................................10

POINT V. THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ..................................................................................11

**CONCLUSION** .......................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir.1990) .................................. 3

*Birmingham Fire Insurance Co. v. KOA Fire & Marine Insurance Co.*, 572 F.Supp. 962 (S.D.N.Y. 1983) ............................................................................................................................ 3

*Bush v. Stern Bros. & Co.*, 524 F.Supp. 12 (S.D.N.Y. 1981) .............................................................. 7

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................... 8

*Franzblau v. Trans Global Communications, Inc.* 1984 WL 145, * 3 (S.D.N.Y. April 12, 1984) ............................................................................................................................................ 10

*Frummer v. Hilton Hotels Intern., Inc.*, 19 N.Y.2d 533 (1967) ...................................................... 6

*Georgia-Pacific Corp. v. Multimark's Intern., Ltd.*, 706 N.Y.S.2d 82 (N. Y. App. Div. 2000) ..... 4

*Hamilton v. Atlas Turner,* 197 F.3d 58 (2d Cir.1999) .................................................................... 11

*Hearst Corp. v. Goldberger*, 1997 WL 97097 (S.D.N.Y. 1997) ...................................................... 9

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d at 57 ................................................................ 3

*Holtzman v. Lauder*, 1994 WL 88013 (S.D.N.Y. 1994) .................................................................. 5

*Hsin Ten Enterprise USA*, 138 F. Supp.2d 449 (S.D.N.Y. 2000) .................................................... 8

*In re Ski Train Fire in Kaprun, Austria*, 2003 WL 1807148 (S.D.N.Y. 2003) ................... 3, 6, 7, 9

*In re Sumitomo Copper Litigation*, 120 F.Supp.2d 328 (S.D.N.Y. 2000). ................................. 3, 6

*Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236 (2d Cir.1999) ........................................................... 3

*National Sun Indus, v. Dakahlia Commercial Bank,* 1995 WL 495636 (S.D.N.Y. Aug. 21, 1995) ............................................................................................................................................ 10

*Nordic Bank PLC v. Trend Group, Ltd.,*  619 F. Supp. 542 (D.C.N.Y. 1985) ................................ 7

*PaineWebber Inc. v. Westgate Group, Inc.,* 748 F. Supp. 115 (S.D.N.Y.1990) .............................. 7

*Plus Systems v. New England Networks, Inc.*, 804 F. Supp. 111 (D. Col 1992) ............................. 9

*Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F. Supp. 858 (D.C.N.Y. 1978) .... 7

*Realuyo v. Abrille*, 2003 WL 21537754 (S.D.N.Y. July 8, 2003) .................................................. 10

*Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150 (S.D.N.Y. 1996) ................................... 6

*Robinson v. Overseas Military Sales Corp., 21* F.3d 502 (2d Cir.1994) ......................................... 3

*Thomas Publishing Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002).. 8

*United Rope Distributors v. Kimberly Line*, 785 F. Supp. 446 (S.D.N.Y. 1992) ............................ 5

*Zippo Manufacturing Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) ....................... 8

## STATUTES

N.Y. C.P.L.R. § 301 ............................................................................................................... passim
N.Y. C.P.L.R. § 302 ............................................................................................................... passim

## OTHER AUTHORITIES

INTERNET WEB SITE ACTIVITIES OF NONRESIDENT PERSON OR CORPORATION AS CONFERRING PERSONAL JURISDICTION UNDER LONG-ARM STATUTES AND DUE PROCESS CLAUSE, 81 A.L.R.5th 41, §6 (2000) .......................................................................... 8

## PRELIMINARY REBUTTAL

Parex Bank cross-moves to dismiss the Plaintiffs Second Amended Complaint. Parex has also opposed Plaintiffs' attempt to obtain this Court's permission to file, by Plaintiffs' Motion for Leave to Amend, its fifth pleading since November 2002. In opposing Parex Bank's Cross-Motion Plaintiffs spend 35 pages of their 56 page Memorandum of Law attempting to justify their view that this Court should exercise personal jurisdiction over Parex Bank, a foreign (Latvian) banking institution.

The shotgun breadth of Plaintiffs' discourse on personal jurisdiction, contrary to Plaintiffs' terse discussion of the actual causes of action asserted against Parex Bank, is a testament to the inherent weakness of the Complaint[1] as well as Plaintiffs' lack of any clear basis for asserting personal jurisdiction over Parex. Despite its breadth, Plaintiffs' case law is simply erroneously applied or misapprehended as to personal jurisdiction. Further, while Plaintiffs' facts as alleged in the Complaint are to be taken as true for purposes of a motion to dismiss under F.R.C.P. 12(b)(6), this is not the case in a challenge made upon jurisdiction. The facts asserted by Plaintiffs in support of an exercise of jurisdiction are simply untrue, wholly unsupported by evidence or Plaintiffs' engage in obvious puffery, sophistry and contortion to "create" facts in support of jurisdiction. Review of the applicable law and the true facts demonstrates that personal jurisdiction should not be exercised over Parex Bank.

## ARGUMENT

**POINT I.    PLAINTIFFS MISREPRESENT THE STATUS OF NEGOTIATIONS AND AGREEMENTS BETWEEN PAREX BANK**

Plaintiffs bemoan Parex Bank's Cross-Motion (Plaintiffs' Brief, p. 1) asserting that they have engaged in a "standstill" agreement and "settlement negotiations".[2] While *Plaintiffs* may have suggested a standstill while Parex Bank's new counsel analyzed Plaintiffs' latest but

---

[1]     The proposed Third Amended Complaint, as Parex Bank argues in that briefing, is a futile attempt to bolster claims which do not or cannot state a cause of action and are otherwise ripe for dismissal.

[2]     Unfortunately misrepresentations by parties must be addressed even though it detracts from salient argument under page limitations.

unacceptable settlement demand, Parex Bank has made no offer at any time nor has it ever indicated that it would. However, Parex Bank has cooperated with Plaintiffs and presented a Parex Bank representative in New York and various documents in order to demonstrate to Plaintiffs and their counsel that Plaintiffs' theories of liability against Parex are based upon mistaken assumptions of fact. These mistaken assumptions of fact, which are contained in the various Complaints, result from a simple lack of due and diligent pre-suit investigation. Parex Bank finds itself subject to Plaintiffs' frivolous claims only because it is a banking institution and, therefore, one of the only economically viable targets which Plaintiffs could snare within the wide net of allegations concerning the Ponzi scheme which was apparently perpetrated by the core defendants.

Further, Parex Bank never agreed to delay challenging Plaintiffs' current Complaint. Rather, when Plaintiffs were attempting to extract a quick settlement from Parex Bank, *Plaintiffs* made the suggestion that a stipulation be agreed whereby Plaintiffs would be granted certain time to file a Motion for Leave to Amend the Complaint[3] and time for Parex Bank to move or answer, twice extended, would be extended yet again.[4] Parex Bank had just replaced counsel and the extra time was welcomed, however, Parex fully reserved its rights to challenge the proposed Third Amended Complaint which obviously includes any opposition to the existing Second Amended Complaint.

Simply put, while Plaintiffs may have been carelessly optimistic that Parex Bank would give them money without challenging the frivolous claims or were otherwise simply surprised with the vigor of the current challenge to the Second Amended Complaint, Parex Bank has done nothing upon which Plaintiffs may rely either in settlement, or in waiver, or in agreement to refrain from moving against the existing pleadings. The Stipulation and recent letters to the

---

[3] The *threatened* amendment was purportedly based upon certain "highly damaging" documents which were promised from Plaintiffs. The documents when presented were obviously misconstrued by Plaintiffs and actually have little to do with Plaintiffs' likewise misguided theories of liability against Parex Bank.

[4] As incoming counsel, we have no idea why Plaintiffs suggested such a stipulation but for the possibility that Plaintiffs were becoming concerned about this Court's perceptions of their less than prompt prosecution of their case.

Court regarding the Stipulation speak for themselves and are attached as **Exhibit "A"** to the accompanying Affirmation of Alec Sauchik, Esq. (Sauchik Aff.).

Plaintiffs' statement in their brief (p.1) that Parex has "violated a court ordered stipulation" by Parex's Cross-Motion is simply knowingly false[5] and, further, is indicative of the nature of the Plaintiffs' puffery and exaggeration permeating Plaintiffs' pleadings and this case.[6]

POINT II.   **PLAINTIFFS BEAR A BURDEN OF PROOF ON PERSONAL JURISDICTION BY A PREPONDERANCE OF THE EVIDENCE AFTER PLAINTIFFS'** *PRIMA FACIE* **SHOWING HAS BEEN PROPERLY REBUTTED**

Plaintiffs failed to meet the initial *prima facie* burden in its pleadings. Once Parex Bank rebutted these initial showings by a jurisdiction testing motion (as Parex has amply done by its Cross-Motion to dismiss and attendant Affidavits) and after Plaintiffs have been afforded over one year to conduct *expedited* discovery, Plaintiffs must now meet their burden by a preponderance of the evidence. "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990), citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d at 57; *Birmingham Fire Insurance Co. v. KOA Fire & Marine Insurance Co.*, 572 F.Supp. 962, 964 (S.D.N.Y.1983); *accord, In re Sumitomo Copper Litigation*, 120 F.Supp.2d 328, 334 (S.D.N.Y. 2000); *see also, In re Ski Train Fire in Kaprun, Austria*, 2003 WL 1807148, *2 (S.D.N.Y. 2003), citing, *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999) and *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994) (plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the court has

---

[5]   In fact, the Stipulation was drafted by Plaintiffs and Parex made only two amendments: the non-waiver language in paragraph 1. and *shortening* the response time from 45 days (suggested by Plaintiffs) to 20 days.

[6]   For example, Plaintiffs factual argument regarding master and sub- accounts (brief pp.2-3) is entirely false.

jurisdiction over the defendant). Under this burden Plaintiffs' arguments opposing the Cross-Motion to dismiss for lack of personal jurisdiction fail.[7]

**POINT III. PAREX BANK HAS NOT CONDUCTED SYSTEMATIC AND CONTUNIOUS BUSINESS IN NEW YORK NOR HAS PAREX BANK PURPOSELY AVAILED ITSELF OF THE FORUM NOR DO THE PLAINTIFFS' CAUSES OF ACTION ARISE FROM PAREX BANK'S CONDUCT IN NEW YORK**

Parex Bank's only significant contact with the state of New York is that it maintains correspondent bank accounts at New York banks and hired an attorney/liaison (only in May 2002) for this purpose.[8] None of the alleged activities of Parex Bank in this action relate in any manner to the state of New York.[9] Plaintiffs assert, many times without offering any evidence at all, that the court should confer jurisdiction over Parex Bank because:

1. maintains correspondent bank accounts and relationships in New York;
2. engaged an attorney/consultant to liaise with its correspondent banks;
3. solicits business in New York through a "network or intermediaries";[10]
4. maintains "interactive websites" where card accounts are advertised; and
5. delivers card products in New York.

Opp Brief, pp. 4-5.

A. <u>Maintenance of Correspondent Accounts in New York</u>

Plaintiffs falsely assert, without any supporting evidence, that Parex Bank's correspondent accounts in New York were used to "funnel" fraud proceeds. Opp Brief at p 9. Relying upon *Georgia-Pacific Corp. v. Multimark's Intern., Ltd.*, 706 N.Y.S.2d 82, 111 (A.D.2000), Plaintiffs also falsely imply, again without any evidence, that Parex Bank derives or conducts substantially *all of its business* through these correspondent accounts. Plaintiffs cannot

---

[7] To the extent that this Court requires and evidentiary hearing and/or a window of discovery limited to personal jurisdiction to resolve this aspect of Parex Bank's Motion to Dismiss, it should fashion the appropriate Order before requiring Parex Bank to proceed to litigate further. *See, Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 263 F.Supp.2d 700, 703 (S.D.N.Y. 2003)(Sweet).

[8] Plaintiffs' allegations of conduct essentially end in June 2002

[9] As set forth below, Plaintiffs have never identified in their pleadings which of the myriad Doe Plaintiffs dealt with Parex Bank or its agents or whether, if at all, any of these Doe Plaintiffs received a Parex Bank debit card.

[10] This is wholly exaggerated and no evidence has been offered.

establish that substantially all of Parex Bank's *debit card business* was conducted through New York correspondent banks, let alone the totality of Parex Bank's business which is the actual standard. *See, United Rope Distributors*, 785 F. Supp. 446 (S.D.N.Y. 1992) (sustaining jurisdiction where the commercial ship charterer defendant had used its New York bank account for receipt of all or "substantially all of its income"); and *Holtzman v. Lauder*, 1994 WL 88013 (S.D.N.Y. 1994) (jurisdiction over foreign investment corporation sustained because the principal activity of the defendant during the time in question was the receipt of the funds of the subscribers and the disbursement of those funds for the purchase of the shares of the Hungarian bank carried out through its Citibank account in New York).

In fact, the overwhelming propensity of Parex Bank's business from 2002 through 2003 was conducted outside the United States. Parex never used its New York correspondent accounts for receipt of all or substantially all of its income, despite Plaintiffs' baseless allegations to the contrary. Parex derives its income primarily from domestic and European activities *See*, Parex Bank's Annual Report, 2002, **Exhibit "B"** to Sauchik Aff. Parex maintains 23 correspondent accounts in over a dozen countries on four continents. *See*, Printout from Parex Bank website, **Exhibit "C"** to Sauchik Affidavit. Only 3 of them are in the USA. *Id.* A disproportionate share of its international operations is performed in Euros, not U.S. dollars. *Id.* To assert, without any support, that Parex Bank funnels all or substantially all of the proceeds of its international business through its NY correspondent accounts is false, illogical and misleading.

Finally, after a year of expedited discovery and with all three of Parex's correspondent banks within Plaintiffs' subpoena power, in support of their "funneling" argument Plaintiffs attach as **Exhibit "5"** only eleven pages of purported wire transfer advices through Parex's correspondent bank, Bankers' Trust. However, upon careful examination, the advices are revealed to be: three (3) repeats of the same transaction on 12/10/01; two (2) are merely confirmations of two (2) others; there are only five (5) transactions in total; four (4) of these five (5) relate to account number 757924 owned by Ecommerce and EuroGold (defendants

Johnson and Zuchristianson); one (1) relates to defendant David Reed's account. Of these transactions, none (0) are from any of the Doe Plaintiffs' personal funds. "These sporadic [and indirect] financial transactions--and the activities in support thereof--do not constitute "doing business" in New York." *In re Ski Train Fire in Kaprun, Austria*, 2003 WL 1807148, *4 (S.D.N.Y. 2003) (analyzing a series of nine cross-border leasing transactions involving properties in Austria that closed in New York). In short, Plaintiffs have presented no evidence of their connection to Parex Bank in New York through correspondent banks such that either general or specific jurisdiction should be conferred.

### B. Parex Bank's Use Of An Independent Attorney/Consultant (Rabinovich) Does Not Provide A Basis For Personal Jurisdiction

The use of an independent attorney/consultant who resides in New York is insufficient to demonstrate that Parex is "doing business" in New York under C.P.L.R. § 301. *See Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1156 (S.D.N.Y. 1996). In attempting to combat this clear case law, Plaintiffs misapply *Frummer v. Hilton Hotels Intern., Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967) and *In re Sumitomo Copper Litigation*, 120 F.Supp.2d 328 (S.D.N.Y. 2000). Plaintiff's misapplication reveals that the New York attorney's engagement in May 2002 also cannot confer jurisdiction under CPLR § 302.

In *Frummer* the Court of Appeals found that a British hotel was subject to personal jurisdiction in New York through the activities of its agent, an affiliated company, where the New York agent not only solicited business and performed public relations activities, but also accepted and confirmed reservations on behalf of the foreign hotel. After noting the various activities that the agent performed for the hotel, the Court of Appeals concluded that the "significant and pivotal factor" is that "the [agent] does all the business which the [British hotel] *could do were it here by its own officials*." A foreign corporation is doing business in New York when its New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar

services. *Id.* It is clear that Ms. Rabinovich's authority was limited to liaison activities with correspondent banks (Pronin Aff., **Exhibits "A" and "B"**) – she did not engage in banking activities as could Parex Bank had it ever established a representative office here which it did not. (Pronin Aff., **Exhibits "D"**)

Further, under *In re Sumitomo* the alleged conduct of the purported agent of Parex Bank (Ms. Rabinovich) must directly relate to "*plaintiffs' transaction* for the benefit of and with the knowledge and consent of the defendants...". *Id.* at 336 (emphasis added). *In re Sumitomo* is only applicable for purposes of CPLR 302(a)-specific jurisdiction.  As is clear from the undisputed facts, Ms. Rabinovich was not even affiliated with Parex when the activities set forth in the Plaintiffs' Complaint occurred but she was first engaged only in May 2002.  Second, correspondent banking liaison activities are not the type of activity of which the Plaintiff's complain.  There is no direct relationship and no specific jurisdiction is conferred.  *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F. Supp. 858, 865 (D.C.N.Y. 1978).

Ms. Rabinovich is a New York attorney first and foremost and has appeared as such before this Court. *See*, Opp Brief, **Exhibit "8"**.

> Nor will the retention of advisors or counsel in New York to assist with these transactions suffice to subject AHP to general jurisdiction in New York. *See PaineWebber Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 120 (S.D.N.Y.1990) (defendant's "desire to get a big 'New York' [i]nvestment house is not a purposeful availment of New York as a forum just as 'Get me a New York lawyer,' without more, is not an invocation of in personam jurisdiction in the forum state of the lawyer's practice") (citations omitted); *Bush v. Stern Bros. & Co.,* 524 F.Supp. 12, 14 (S.D.N.Y.1981) ("The location in New York of firms, such as law firms and investment services, which perform services for [defendant] for a fee[,] does not represent activity by [defendant] in New York for jurisdictional purposes."); *Daniel,* 988 F.Supp. at 223 ("Defendant's use of New York companies in issuing bonds to raise capital, the use of investment advisors or other New York professional organizations, and the hiring of New York attorneys ... are not sufficient contacts with New York to provide for jurisdiction...."). The fact that plaintiffs have separately alleged the maintenance of bank accounts, the retention of counsel, and the engagement of financial advisors in New York does not mean that I can find, as I have before, that these activities are sufficient, in the aggregate, to confer jurisdiction on defendant.

1.
*In re Ski Train Fire in Kaprun, Austria,* 2003 WL 1807148 (S.D.N.Y. 2003); *accord, Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 566 (D.C.N.Y. 1985) (foreign

banks' contacts with New York in marketing over $100 million in commercial paper in New York were found limited, sporadic, and not so substantial and continuous as to support a finding that the banks are doing business here under C.P.L.R. §301 nor did the cause of action asserted arise out of the defendant's activities in New York under C.P.L.R.§ 302).

### C.      Parex Bank's Websites Do Not Confer Jurisdiction

Plaintiffs likewise misapprehend or misapply their cited case law pertaining to personal jurisdiction by virtue of "interactive" websites. The general thrust of the current body of law is against conferral of jurisdiction through websites and has been dealt with in Parex Bank's Memorandum of Law. *See also*, INTERNET WEB SITE ACTIVITIES OF NONRESIDENT PERSON OR CORPORATION AS CONFERRING PERSONAL JURISDICTION UNDER LONG-ARM STATUTES AND DUE PROCESS CLAUSE, 81 A.L.R.5th 41, §6 (2000).

Plaintiffs cite *Hsin Ten Enterprise USA*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000), *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000), *Thomas Publishing Co.*, 237 F. Supp.2d 489 (S.D.N.Y. 2002) and *Zippo Manufacturing Co.*, 952 F. Supp. 1119 (W.D. Pa. 1997) for the proposition that an interactive websites supports a finding of personal general jurisdiction over the defendant. However, each of these four cases deal only with specific jurisdiction under C.P.L.R. § 302. In each of these four cases, the conduct giving rise to the causes of action directly resulted from or related to the use of the interactive websites. In the case at bar, it is only by mere afterthought that Plaintiffs assert that any conduct by Parex Bank involved internet marketing. None of the Plaintiffs' Complaint(s) contain mention of Parex Bank's websites, and thus no substantial nexus between the website and Plaintiffs' claims exists.

As was stated recently in another case and as is equally applicable to Plaintiffs here:

> [E]ach of these cases [including *Zippo*] and the others cited in this section of plaintiffs' brief apply Pennsylvania's long-arm statute (and that of other states) conferring *specific* jurisdiction, i.e., jurisdiction over a dispute about an Internet sale or transaction in the forum. Plaintiffs fail to cite a single decision where a Pennsylvania federal or state court concluded that even highly interactive Internet activity was sufficient to confer *general* jurisdiction over a nonresident.

*In re Ski Train Fire in Kaprun, Austria*, 230 F.Supp.2d 392 (S.D.N.Y. 2002).

### D. Parex Bank is Not Subject to Jurisdiction In New York Merely Because It Issues CIRRUS Debit Cards That Can Be Used At ATMs

Similarly, Plaintiffs misapply case law concerning this issue. *Plus Systems*, 804 F. Supp. 111 (D. Col 1992), for example, only dealt with specific jurisdiction. Further, it is another case on application of Colorado's long-arm jurisdictional statute which is substantially broader than New York CPLR 301 and allows exercise of jurisdiction to the full extend permitted by the Constitution. As was explained in a more recent New York case in which declined jurisdiction on facts similar to the instant action:

> The *Plus Systems* court based jurisdiction upon defendant's computer communications via telephone with plaintiff's computer in Colorado, in combination with: a licensing contract entered into by defendant with the Colorado based company and signed by defendant in Colorado; defendant's monthly payments to plaintiff in the forum state pursuant to the contract; and visits by defendant's representative to Colorado to initiate the business relationship with plaintiff. *Id.* at 118-19. The *Plus System* court was careful to note that the defendant "availed itself of the State of Colorado by means which might be of insufficient quantum to justify personal jurisdiction if considered individually, but which clearly rise to purposeful availment when viewed collectively." *Id.* at 118.

*Hearst Corp. v. Goldberger*, 1997 WL 97097 (S.D.N.Y. 1997)(finding no personal jurisdiction under either C.P.L.R § 301 or 302 based upon internet websites which were held akin to advertisements only).

### E. Parex Bank Does Not Market or Solicit Business in New York

Advertising alone is not sufficient to confer general personal jurisdiction (*Hearst Corp. v. Goldberger*, 1997 WL 97097 (S.D.N.Y. 1997)) and under the facts as alleged by Plaintiffs in their Complaint(s), specific jurisdiction is likewise lacking. Not one of the remaining 1,049 individual plaintiffs in this lawsuit has met its burden of showing a New York-related activity by Parex Bank and a "substantial relationship" between his, her or its claims and Parex Bank's alleged New York activities. The need for each plaintiff to make such a showing is magnified because the OSGold and OSOpps fraud was conceived and existed, well before Parex allegedly became 'involved,' and thus many or all plaintiffs may have participated before Parex's

'involvement' began. Since the Plaintiffs brought this lawsuit, they must know if they engaged in transactions with Parex Bank in New York. Plaintiffs have provided no evidence whatsoever that they engaged in a New York transaction with Parex Bank. Further, no plaintiff has offered any evidence that he or she sent any money to Parex Bank. Conclusory assertions that Parex Bank transacted business in New York and that a cause of action arises out of those transactions are insufficient to confer jurisdiction. *See, e.g., Franzblau v. Trans Global Communications, Inc.* 1984 WL 145, * 3 (S.D.N.Y. 1984).

In addition, no "substantial relationship" exists between any claim in this case and Parex Bank's correspondent accounts. *See Realuyo v. Abrille,* 2003 WL 21537754, * 5 (S.D.N.Y. 2003) (Section 302 requires a "substantial relationship" between the New York transaction and the claims).[11] Similarly, no Plaintiff has alleged that he or she opened a bank account or obtained a Parex Bank debit card in New York through Parex Bank's website.

Similarly, no finding of specific jurisdiction can be made on the basis of alleged communications between Parex Bank's computers and ATMs in New York. No plaintiff has alleged that he or she withdrew cash in New York using a Parex Bank debit card. No cause of action arises out of a failed ATM transaction, and the Complaint contains no mention of any ATM withdrawal in New York.

**POINT IV.   PAREX HAS NEVER WAIVED JURISDICTIONAL DEFENSES AND, IN FACT, PRESERVED THEM**

Parex raised its jurisdictional defense in it opposition to Plaintiffs' application for a TRO, Order of Attachment and Preliminary Injunction against Parex. Quoting from Plaintiffs' Reply to Parex Bank's Opposition to OSRecovery's Motion for TRO and attachment: "Parex portrays itself in its opposition papers as an innocent Latvian bank that maintains no contacts with the

---

[11] Specific jurisdiction generally does not arise based upon a correspondent bank account even if there is some relationship between the correspondent account and the cause of action at issue in the litigation. *See National Sun Indus, v. Dakahlia Commercial Bank,* 1995 WL 495636 (S.D.N.Y. 1995) (finding no specific personal jurisdiction based upon the use of a correspondent account in New York, even though an authorization for reimbursement through the account given to the New York bank by the defendant and a subsequent revocation of that authorization by the defendant were at issue in the lawsuit).

United States or New York other than its correspondent New York bank accounts. (Def. Mem Law Opp'n at 1.). Parex has not produced a forfeiture of the defense as was the case in *Hamilton v. Atlas Turner,* 197 F.3d at 61 (2d Cir.1999), where the court found waiver when defendant participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer. In fact, the last Stipulation ordered by this Court contained Parex Bank's specific non-waiver of all rights to move against Plaintiffs' pleadings, existing or proposed. *See,* Sauchik Aff., **Exhibit "A"**, ¶1.

POINT V.   THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Parex Bank relies on its initial Memorandum of Law in support of the Cross-Motion as its arguments are amply set forth there. Nothing argued by Plaintiffs has significantly addressed Parex Bank's Motion to Dismiss.

## CONCLUSION

Based on the foregoing, defendant Parex Bank respectfully requests that all of the claims asserted against it in the Second Amended Complaint be dismissed in their entirety with prejudice.

Date:   New York, New York
        December 12, 2003

Respectfully submitted,
VERNER SIMON, P.C.

By: _____
Paul W. Verner (PV-0724)
1350 Broadway
New York, New York 10018
(212) 502-5500
Attorneys for Defendant Parex Bank

## AFFIRMATION OF SERVICE

Alec Sauchik, an attorney, affirms the following under penalty of perjury: I am not a party to the action, am over 18 years of age and reside in Kings County, New York.

On December 12, 2003, I caused the original of the REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO DISMISS WITH AFFIDAVITS AND EXHIBITS to be delivered to the Clerk of this Court electronically and by facsimile and regular mail to:

>A. John Mancini, Esq.
>LeBoeuf Lamb Greene & MacRae, LLP
>125 West 55th Street
>New York, New York 10019
>
>Chaim A. Levin, Esq.
>Freedman & Gersten
>Empire State Building
>350 Fifth Avenue, Suite 4606
>New York, New York 10118
>
>Edward F. Westifeld, Esq.
>Edward F. Westifeld, P.C.
>420 Fifth Avenue, 25th Floor
>New York, New York 10018
>
>Lawrence W. Newman, Esq.
>Baker & McKenzie
>805 Third Avenue
>New York, New York 10022

_____
ALEC SAUCHIK (AS-5002)